NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARILYNN ENGLISH,<br><br>        Plaintiff,<br>v.<br><br>ATTORNEY DAVID KAPLAN, *et al.*,<br><br>        Defendants. | Civil Action No.: 18-01617<br><br>**OPINION** |

**CECCHI, District Judge.**

This matter comes before the Court upon four items: (1) a motion to dismiss filed by Judge Allison Accurso, Judge William Nugent, and Judge Carolyn Wright (collectively, the "Judicial Defendants"), ECF No. 56; (2) a motion dismiss filed jointly by all defendants (collectively, the "Defendants"), ECF No. 58; *see also* ECF No. 58-1 ("Def. Br."); (3) an order to show cause ("OTSC") issued to Marilynn English ("English" or "Plaintiff"), ECF No. 76, and her responses, ECF Nos. 78 ("Pl. OTSC Resp."), 85 ("Pl. OTSC Supp."); and (4) English's motion for recusal, ECF No. 82. English opposed the motions to dismiss, ECF Nos. 59 ("Pl. Br."), 60 ("Pl. Supp. Br."), and Defendants replied, ECF No. 65 ("Def. Reply"). English filed additional materials, which the Court has also considered. ECF Nos. 64, 81, 84. 86.  The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). Having considered the parties' submissions, and for the reasons set forth below, both motions to dismiss are GRANTED. Plaintiff's motion for recusal is DENIED.

    **I.**      **BACKGROUND**

The instant action, a civil RICO and § 1983 suit against 14 defendants, arises out of the facts underlying two previous lawsuits, which, in turn, concerned a mortgage transaction and related real estate purchase in 2006. Because the instant action requires an understanding of the

facts of the real estate transaction and the subsequent two lawsuits, the Court first describes these incidents before turning to the details of the civil RICO and § 1983 suit presently before the Court.

### A. The 2006 Real Estate Transaction

In 2005, English, who was the co-founder and partial owner of the mortgage brokerage firm English Financial LLC ("EFLLC") was approached by Shauyn Copeland ("Copeland") to assist her in procuring a mortgage in connection with her purchase of a four-family home in Newark, New Jersey from Copeland's brother-in-law Rodney Copeland. *See, e.g.,* Compl. ¶¶ 24, 30-63.[1] Because Copeland indicated she planned on living in the property and wanted to minimize any down payment, English advised her to apply for a stated income loan requiring only a ten percent down payment but requiring asset verification. *See English v. Bank of Am.*, N.J. App. No. A-4524-12T1, 2014 WL 9988580, at *1 (N.J. Super. App. Div. July 2, 2015). English then submitted a Verification of Deposit form to Copeland's bank on behalf of Copeland to verify her assets. Copeland's bank verified that Copeland had approximately $76,000 in assets, although English now alleges that Copeland "did not have the money she claimed to have on deposit at the bank." *Id.* at *2.

In 2006, Copeland agreed on a purchase price with her brother-in-law and obtained a mortgage from Countrywide Bank, N.A. ("Countrywide"), with English's assistance. Shortly thereafter, Copeland defaulted on her mortgage, and the property went into foreclosure, leading to the first of the two prior lawsuits implicated here. *Id.* at *1.

---

[1] These facts are laid out in more detail in *English v. Bank of Am.*, N.J. App. No. A-4524-12T1, 2014 WL 9988580 (N.J. Super. App. Div. July 2, 2015), as part of the 2010 lawsuit filed by English that is discussed further below.

### B. The 2009 and 2010 Actions

The first lawsuit was a predatory lending complaint brought by Copeland against Countrywide (the "2009 Action"). It also named as defendants the other parties having some involvement with the loan or real estate transaction—namely English, EFLLC (her mortgage brokerage), and the title agency that participated in the closing.[2] Copeland asserted, *inter alia*, violations of the Federal Truth in Lending Act, the Federal Real Estate Settlement Procedures Act, and the federal RICO statute. The crux of the suit appears to have been an attempt to stop the pending foreclosure of Copeland's property (although certain monetary damages were also sought) on account of various allegations of fraud perpetrated by Countrywide and the others involved in the mortgage and real estate transaction. *See generally* Civ. Action No. 09-4675, ECF No. 1; *see also, e.g., id*. at ¶ 69. The 2009 Action was removed to this Court, and after a settlement conference before Magistrate Judge Mark Falk, it was "settled as to all parties and all claims." ECF No. 32. Specifically, it was voluntarily dismissed with prejudice with respect to Countrywide, and dismissed without prejudice as to English and EFLLC. *See* ECF Nos. 30-32. That settlement was funded by Bank of America, N.A. ("BOA") on behalf of Countrywide, which BOA had acquired in 2009. *See* Def. Br. at 6.[3]

The second lawsuit, filed in 2010, was a New Jersey state court action instituted by English and EFFLC[4] against individuals and entities related to the 2009 Action, many of whom are now

---

[2] Copeland brought the action through her counsel David Kaplan, and English defended the action through her counsel William Strazza. Both Kaplan and Strazza are named as defendants in the instant action.

[3] Defendants assert that this is a matter of public record for which the Court may take judicial notice. *See* Def. Br. at 6. That BOA funded the settlement was also noted by the Appellate Division. *See English*, 2014 WL 9988580, at *1 n.2.

[4] EFLLC's claims were dismissed after its counsel withdraw, and English became self-represented. *See English*, 2014 WL 9988580, at *1.

3

named as defendants in the instant action. *See English v. Bank of Am.*, N.J. Case No. ESX L-10269-10 (the "2010 Action") (listing Copeland, Rodney Copeland, Michael Copeland, Donna Rinaldo, and David Kaplan as defendants, as well as Bank of America, N.A. ("BOA")).[5] English asserted "common law fraud, conspiracy, tortious interference, negligence, negligent supervision and tortious interference, vicarious liability, negligent interference, fraud, filing a false and frivolous lawsuit, and facilitating fraud." *English*, 2014 WL 9988580, at *1. As the Appellate Division further explained:

> The gravamen of her claims is that she was the victim of fraud committed by Shauyn, Rodney, Rinaldo and the unidentified Bank of America employee that provided the erroneous information on the Verification of Deposit. She claims that because of the lawsuit filed negligently against her and her company by David Kaplan, the company lost its surety bond, causing damage to her reputation and income. Plaintiff claims English Financial could not broker mortgages without a bond, and that its loss ultimately led to her personal bankruptcy.

*Id.* Accordingly, English sought money damages resulting from the loss of her company's surety bond and related losses in income. *See id*. After several years of litigation, the state court dismissed the action on summary judgment, with the trial court's dismissal affirmed by the Appellate Division upon English's appeal. *See id*. The Appellate Division affirmed that English could not establish that any of the defendants owed her a cognizable duty, and that English "failed to establish the claimed reduction in her income was proximately caused by the [2009 Action]." *Id.* at *4. The court also affirmed dismissal of the claim for a false and frivolous lawsuit. Finally, the court acknowledged English's own concession in the 2010 Action that "the fraud at the heart of her conspiracy claims can not [sic] yet be proven" and that other allegations were "nothing more than mere speculation." *Id.* at 3 (internal quotations omitted).

---

[5] The attorneys for the defendants in the 2010 action—Benjamin Slavitt, Joseph Mariniello, William T. Marshall, Jr., and Steven Tegrar—are all named as defendants in the instant action.

4

The New Jersey Supreme Court denied certification of the Appellate Division's decision. *See English v. Bank of Am., N.A.*, 137 A.3d 533 (N.J. 2016). The United States Supreme Court subsequently denied certiorari, *see English v. Bank of Am., N.A.*, 137 S. Ct. 1087 (Mem.) (Feb. 21, 2017) and a petition for rehearing, *see English v. Bank of Am., N.A.*, 138 S. Ct. 34 (Mem.) (July 17, 2017).

### C. The Instant Action

After exhausting her appellate options in New Jersey and the United States Supreme Court, English filed the instant action. *See* ECF No. 1 ("Compl."). As best as can be discerned from the pleadings, the fourteen counts of the Complaint, each naming a different defendant, appear to assert causes of action under the Racketeer Influenced Corrupt Organization Act, 18 U.S.C. § 1964(c) ("RICO") and 42 U.S.C. § 1983. *See, e.g.,* Compl. ¶¶ 63, 183. The crux of the Complaint appears to be that "all Judges [in the two prior actions] ruled incorrectly based on bias, prejudice, and incorrect 'facts' (a/k/a misrepresentations) by the Defendants." *Id.* at 2 (Introduction). Accordingly, English "demands that the initial case be reopened." *Id.* ¶¶ 64, 72, 89, 115, 120, 134, 140, 149, 162, 177, 182, 200, 227, 238. She also appears to seek monetary damages in the form of "punitive and treble damages," *id.* ¶¶ 64, 72, 89, *et al.*, apparently "[d]ue to Plaintiff[']s loss of her Surety Bond and loss of income due to the fraud and other charges against [Plaintiff]," *id.* at 1.

Portions of the Complaint attempt to explain the allegations originally made by Copeland in the 2009 Action, and then proceed to refute these allegations, offering English's own version of the facts underlying the 2009 suit filed by Copeland. *See, e.g., id.* ¶¶ 30-64, 55-69, 94-114, 121-33 151-55. Based on English's version of events, Copeland allegedly engaged in widespread fraud concerning her disclosures for the 2006 mortgage and real estate transactions, as well as with respect to other unrelated incidents. *See, e.g., id.* ¶¶ 33, 43, 151-57. English also alleges that Copeland's attorney in the 2009 Action, David Kaplan, knew about Copeland's fraud but

nevertheless filed the lawsuit on her behalf, thus "dragg[ing] in innocent people most likely to obtain insurance or settlement proceeds, while aiding and abetting his client's fraud." *Id.* ¶ 54. As English later explains, because Copeland "was a master at fraud," she was a "perfect partner for Attorney Kaplan's scam" to "stop people from being foreclosed upon" by "providing false and fraudulent documents to the Court." *Id.* ¶ 151. This conspiracy of fraud appears to form the basis of English's RICO allegation.

English appears to allege that all 14 defendants took part in this conspiracy of fraud directly, or knew of the fraud and took no action to stop it, thereby becoming part of the RICO conspiracy and enterprise. For example, in terms of direct participation in the alleged fraud, English asserts that Rodney Copeland "masterminded the fraudulent purchase of his property with his sister in law." *Id.* ¶ 163; *see also id.* ¶ 121 (alleging Donna Rinaldo, Copeland's lawyer for the real estate transaction, contributed to the fraud "through her falsified contracts"). Other defendants, on the other hand, are alleged to be part of the conspiracy based upon their knowledge of the fraud combined with a failure to act. *See, e.g., id.* ¶ 73 (alleging that attorney Steven Tegrar, defense counsel in the 2010 Action for Copeland's real estate attorney Donna Rinaldo, "knew that the allegations against Plaintiff were fraudulent, yet he did nothing to stop it"); *id.* ¶ 135 (asserting that Kaplan's law partner, Frank Tobias, was part of the conspiracy because he authorized the settlement in the 2009 Action); *id.* ¶ 116 (claiming that Joseph Mariniello, Rodney Copeland's attorney in the 2010 Action, "knew of the fraud perpetrated by his client … [but] did not report his client or any other party in the conspiracy to Federal Authorities.").

English also contends that the New Jersey judges ruling on her 2010 Action—Judge Wright at the trial level, and Judges Accurso and Nugent at the appellate level—were part of this conspiracy and, accordingly, deprived English of her due process rights in violation of § 1983 when they dismissed or affirmed dismissal of the 2010 Action. *See id.* ¶¶ 183-238.

In sum, liberally construing the Complaint, English purports to allege a RICO conspiracy—between the litigants in the 2009 Action and the 2010 Action, their attorneys (including English's attorney, *see id.* ¶¶ 31-33), and the judges ruling on these Actions—aimed at the following: securing a real estate purchase by fraud; instituting a frivolous lawsuit against English and others based on fraudulent documents for the purpose of stopping foreclosure on Copeland's property; and then continuing and/or covering up that fraud as defendants (or judges) in the 2010 Action brought by English.

### D. Procedural History

The Judicial Defendants moved to dismiss the claims against them based on judicial immunity. *See* ECF No. 56. Defendants also moved jointly to dismiss the complaint on multiple grounds, including lack of subject matter jurisdiction pursuant to various preclusion doctrines and lack of standing, as well as a failure to state a claim under Rule 12(b)(6). *See generally* Def. Br.[6] English's responses mostly reiterated the allegations in her Complaint, *see generally* Pl. Br., Pl. Supp. Br., and included assertions that two of the preclusion doctrines raised by Defendants (*res judicata* and the entire controversy doctrine) did not apply. *See* Pl. Br. at 22.

Thereafter, the Court issued English an order to show cause ("OTSC") why her complaint in this case should not be dismissed without prejudice pursuant to the *Rooker-Feldman* doctrine, the *Younger* abstention doctrine, *res judicata*, and collateral estoppel. ECF No. 76. English offered two responses. *See generally* Pl. OTSC Br., Pl. OTSC Supp. In these responses, English returned to the alleged conspiracy, explaining: "This Case is rife with Fraud. Defendants' collectively and individually resulted in the Banks, Corporations and Individuals being swindled in untold amounts

---

[6] Defendant Benjamin Slavitt filed an individual "supplemental submission" seeking to dismiss the Complaint on the basis that he was not English's attorney and did not owe her a cognizable duty. ECF No. 57 at 1. Because the Court dismisses the Complaint on other grounds, it need not reach this argument.

of money which have yet to be investigated." Pl. OTSC Br. at 2; *see also id.* at 11 (explaining "[t]he failure to Act by the Judges is why we are here today"). When interpreted in the light most favorable to her, English's responses appear to assert that certain preclusion doctrines do not apply because "RICO was not previously addressed or argued in any Court." *Id.* at 14; *but see id.* ("The State Court Action is not ongoing.  It was never a RICO Action…. If there were 'important state interests implicated in the Prior State Court Action' why did the Judges dismiss them without reading the factual data as they are required to do."). *Id.* at 14 (quoting ECF No. 76 at ¶7) (emphasis omitted).

English also filed a motion seeking recusal of both this Court and Magistrate Judge Steven C. Mannion, ECF No. 82, which Judge Mannion denied. ECF No. 83.[7] To the extent Judge Mannion's order spoke only for himself, this Court also finds that recusal is not warranted as to the undersigned. English alleged that "continuous erroneous rulings qualify as a right to ask for recusal." ECF No. 82 at 12. However, a litigant's disagreements with the decisions of the Court do not provide cause for recusal.  *See, e.g., Securacomm Consulting, Inc. v. Securacom, Inc.*, 224 F.3d 273, 278 (3d Cir. 2000) (holding a party's displeasure with legal rulings does not form an adequate basis for recusal). Moreover, English's conclusory assertion that there "has been bias[] toward this Pro Se Plaintiff since inception," ECF No. 82 at 14, similarly fails to justify recusal. *See Bey v. Bruey*, No. 09–1092, 2010 WL 276076, at *1 (D.N.J. Jan 19, 2010) ("Conclusory allegations of bias are insufficient to warrant recusal.") (citing *Hill v. Carpenter*, 323 F.App'x 167, 170 (3d Cir.

---

[7] In addition to the motion for recusal, English filed numerous other motions with this Court that have since been addressed. *See, e.g.,* ECF Nos. 3, 5, 6, 51, 69. The Court notes that English has also provided additional briefing and correspondence in various formats, which, although not always compliant with the Local Rules, the Court has nonetheless considered in their entirety. *See, e.g.,* ECF Nos. 81, 84, 86.

8

2009)). Accordingly, insofar as there may be any uncertainty regarding the scope of Judge Mannion's order on recusal, this Court reiterates that recusal of the undersigned is unwarranted.

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

A court must grant a motion to dismiss under Rule 12(b)(1) if it determines that it lacks subject matter jurisdiction over a claim. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). "Generally, where a defendant moves to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction, the plaintiff bears the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction." *The Connelly Firm, P.C. v. U.S. Dep't of the Treasury*, No. 15-2695, 2016 WL 1559299, at *2 (D.N.J. Apr. 18, 2016) (citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000)). Further, when addressing subject matter jurisdiction, the court looks only at the allegations in the pleadings and does so in the light most favorable to the non-moving party. *U.S. ex rel. Atkinson v. PA. Shipbuilding Co.,* 473 F.3d 506, 514 (3d Cir. 2007).

### B. Rule 12(b)(6)

To survive dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). Factual allegations must support a right to relief that is more than speculative. *Twombly*, 550 U.S. at 555. A complaint "that offers 'labels and conclusions' or . . . tenders 'naked assertions' devoid of further factual enhancement,'" will not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). The party seeking

dismissal under Rule 12(b)(6) bears the burden of demonstrating that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

### C.  Liberal Pleading Standard for *Pro Se* Litigants

*Pro se* complaints are liberally construed and held to less stringent standards than pleadings drafted by lawyers. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (2013) ("[P]ro se litigants still must allege sufficient facts."). A *pro se* complaint will be dismissed if "it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Mishra v. Fox*, 197 F. App'x 167, 168 (3d Cir. 2006) (citation omitted).

### III.  **DISCUSSION**

As noted above, there are two motions to dismiss before the Court. The first, filed by the Judicial Defendants, argues that they are entitled to absolute judicial immunity. *See* ECF No. 56. The second, filed jointly by all Defendants, makes three arguments why the Complaint must be dismissed: (1) this Court lacks subject matter jurisdiction based on the *Rooker-Feldman* doctrine, English's lack of standing, *res judicata*, and the entire controversy doctrine; (2) the Complaint fails to state a claim under Rule 12(b)(6); and (3) the Complaint is insufficiently pleaded under Rules 8(a) and 9(b). *See* ECF No. 58. Because the OTSC addresses preclusion doctrines also raised in the motion to dismiss, the Court need not address the OTSC separately. Addressing each motion to dismiss in turn below, the Court finds that the judicial Defendants are entitled to absolute judicial immunity, and the Court must also dismiss the Complaint for lack of subject matter jurisdiction and failure to state a claim under Rule 12(b)(6).

### A.  Judicial Immunity

The United States Supreme Court has long held that "it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal

consequences to himself." *Bradley v. Fisher*, 80 U.S. 335, 347 (1871). Accordingly, our judicial system provides that "[a]ny errors made by a judge may be corrected on appeal, but a judge should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption." *Pierson v. Ray*, 384 U.S. 547, 554 (1967). Simply put, the Supreme Court "has consistently adhered to the rule that judges defending against § 1983 actions enjoy absolute immunity from damages liability for acts performed in their judicial capacities." *Dennis v. Sparks*, 449 U.S. 24, 27 (1980) (internal quotation marks and citations omitted).

Here, none of the allegations, even liberally construed, would defeat judicial immunity. Plaintiff's allegation against Judge Wright appears to be that she was improperly biased on account of becoming "belligerent" with an attorney in an unrelated case, her husband's friendship with the "County Executive," and her failure to recuse. Compl. at 39-40. To the extent the allegations touch upon Judge Wright's own conduct, that conduct was performed within her judicial capacity. Therefore, Judge Wright is entitled to judicial immunity.

Similarly, English's allegations against Judge Accurso and Judge Nugent concern erroneous rulings which were allegedly based entirely on "whatever was written by the attorneys," which, English believes, consisted of "false statements made by the Attorneys " *Id.* at 42. These allegations also challenge actions taken in the Judicial Defendants' judicial capacity, and thus fail to pierce judicial immunity. In sum, treating all allegations as true, they amount to attacks on court decisions that cannot overcome judicial immunity. Because amending the Complaint would be futile with respect to judicial immunity, the Judicial Defendants are dismissed from this matter with prejudice. *See Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000).

    **B.**    **Lack of Subject Matter Jurisdiction**

Pursuant to Rule 12(b)(1), the Defendants move to dismiss the Complaint based on this Court's lack of subject matter jurisdiction. *See* Def. Br. at 15-22. They argue that the Court lacks

11

subject matter jurisdiction under the *Rooker-Feldman* doctrine, that English lacks standing to bring this action on behalf of JP Morgan Chase Bank ("Chase"), and that English's claims are barred by *res judicata* and the entire controversy doctrine. English contested these arguments in her opposition briefs and in her responses to the Court's OTSC. *See generally* Pl. Br., Pl. Supp. Br., Pl. OTSC Resp., Pl. OTSC Supp.

      i.      *Rooker-Feldman*

The *Rooker-Feldman* doctrine prevents federal courts from "review[ing] and revers[ing] unfavorable state-court judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005) (citing *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923)); *see also Judge v. Canada*, 208 F. App'x 106, 107 (3d Cir. 2006) ("The *Rooker-Feldman* doctrine deprives a federal district court of jurisdiction to review directly or indirectly a state court adjudication."). This precludes "lower federal court jurisdiction over claims that were actually litigated or 'inextricably intertwined' with adjudication by a state's courts." *Parkview Assocs. Pshp. v. City of Leb.*, 225 F.3d 321, 325 (3d Cir. 2000) (internal qutotation omitted). Accordingly, this Court is prohibited by the doctrine from providing relief that would effectively reverse the decisions, directly or indirectly invalidate the determinations, prevent the enforcement of the orders, or void the rulings issued by the State Court in the 2010 Action. *See Jacobsen v. Citi Mortg. Inc.*, 715 F. App'x 222, 223 (3d Cir. 2018). The Third Circuit has distilled the doctrine into a four-prong test, explaining it is applicable to "[1] cases brought by state-court losers [2] complaining of injuries caused by state-court judgments [3] rendered before the district court proceedings commenced and [4] inviting district court review and rejection of those judgments." *Doncheva v. Citizens Bank of Pennsylvania,* 820 F. App'x 133, 135 (3d Cir. 2020) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005)). For the

reasons discussed below, the Court finds that this case meets all four prongs of the *Rooker-Feldman* test.

Before turning to the test, the complexity of English's allegations warrants a summary of her claims. Construing the Complaint liberally and in the light most favorable to her, English's RICO claims are premised upon the allegation that the judgment entered against her in the 2010 Action was incorrect and the result of fraud. Essentially, English contests the facts that were presented to this Court in the 2009 Action and to the state court in the 2010 Action (which includes facts relating to the 2006 mortgage and real estate transaction), asserting that those "facts" were either fraudulent misrepresentations or incorrect. And because the litigants and attorneys were aware of this fraud (or went along with it or overlooked it in the judges' case), English alleges they were all part of a RICO conspiracy. *See, e.g.,* Compl. ¶¶ 30-64 (challenging the basis for the 2009 Action as fraud); *id.* ¶¶ 65-72 (alleging Benjamin Slavitt, Copeland's attorney in the 2010 Action, was aware of Copeland's fraud in the 2006 transaction and 2009 Action); *id.* ¶¶ 90-115 (alleging false interrogatories and erroneous certifications by William T. Marshall, Jr., attorney for Countrywide Bank, N.A., and BOA in the 2009 Action); *id.* ¶¶ 116-20 (alleging Joseph Mariniello, attorney for Rodney Copeland in the 2010 Action, did not report his client's prior fraud); *id.* ¶¶ 121-34 (alleging Rinaldo committed fraud as the attorney for Copeland in the 2006 real estate transaction). At its core then, putting aside the complicated nature of each defendant's purported role in the various transactions and lawsuits, English's RICO claims seek to attack the result of the 2010 Action based on English's contrasting account of the facts underlying that suit.

Having set forth the relevant context for this issue, the Court turns back to the test for the *Rooker-Feldman* doctrine. The first and third prongs ask whether the case was brought by a "state-court loser" where the state court decision was "rendered before the district court proceedings commenced," respectively. *Doncheva,* 820 F. App'x at 135. These prongs are satisfied here

13

because the New Jersey Superior Court entered its Final Judgment *against* English in 2013, and the Appellate Division affirmed the judgment on July 2, 2015. *See English*, 2014 WL 9988580; *see also English v. Bank of Am., N.A.*, 137 A.3d 533 (N.J. 2016) (denial of certification by New Jersey Supreme Court); *English v. Bank of Am., N.A.*, 137 S. Ct. 1087 (Mem.) (Feb. 21, 2017) (denial of petition for certiorari). Moreover, Plaintiff did not file the instant Complaint until February 6, 2018, after the culmination of those state court proceedings. ECF No. 1.

The second prong—whether Plaintiff is "complaining of injuries caused by state-court judgments"—is also satisfied because Plaintiff seeks the same damages she was denied in the 2010 Action and, moreover, seeks to correct that decision due to alleged erroneous or fraudulent information. *Id.* As the Third Circuit found in *Purpura v. Bushkin, Gaimes, Gains, Jonas & Stream*, 317 F. App'x 263 (3d Cir.2009), a RICO suit that alleges conspiracy and fraud in a prior unfavorable decision is essentially a challenge to injuries caused by that unfavorable prior judgment. *See id.* at 264 (rejecting RICO suit brought against plaintiff's former wife and the attorneys and state court judiciary in plaintiff's divorce action which claimed that the defendants "conspired to use the New York divorce action as a vehicle to fraudulently obtain and enter judgments against him"). Although English contends that "RICO was never argued in the previous action against all the Defendants," Pl. Br. at 14, English does not refute that the injuries she complains of were rejected by the state courts in the 2010 Action. Moreover, in *Purpura,* the Third Circuit recognized that a RICO allegation had not been made in the prior action but nevertheless found that the subsequent RICO suit was "precisely the kind of action that the *Rooker-Feldman* doctrine is designed to preclude" because it sought to invalidate a prior judgment based on a purported conspiracy of fraud. *Purpura,* 317 F. App'x at 266. The Third Circuit's reasoning in *Purpura* applies directly to this case as well, a RICO suit claiming fraud in a prior action with an unfavorable result.

14

The fourth prong—whether the instant action invites district court review and rejection of those judgments—is met because, in order for this Court to grant the relief Plaintiff requests, it would have to find that the state courts should not have dismissed the 2010 Action. *See Parkview Assocs. Pshp.* 225 F.3d at 325; *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 192 (3d Cir. 2006) (explaining the standard encapsulates litigations "[w]here federal relief can only be predicated upon a conviction that the state court was wrong"). For example, to sustain the damages Plaintiff seeks, this Court would have to find—in direct contrast to the decision of the New Jersey state courts—that Plaintiff's loss of surety bond and associated losses of income indeed resulted from a fraud perpetrated on Plaintiff through the 2009 Action. *See English*, 2014 WL 9988580, at *3. Additionally, granting English's "demand[] that the [2009 Action] be reopened," *see, e.g.,* Compl. ¶¶ 64, 72, 89, *et al.*, would require this Court to accept the same factual allegations deemed to be "nothing more than mere speculation" by the court in the 2010 Action, *English*, 2014 WL 9988580, at *3. Because the Court "is prohibited from providing relief that would effectively reverse the decisions, directly or indirectly invalidate the determinations, prevent the enforcement of the State Judgment, or void the rulings issued by the state court in the State Foreclosure Action," it cannot grant the relief sought by Plaintiff. *Wilson v. New Jersey, et al.*, No. 17-444, 2017 WL 2539398, at *3 (D.N.J. June 12, 2017) (citing *Francis v. TD Bank, N.A.*, 597 F. App'x 58, 60–61 (3d Cir. 2014)). Accordingly, as this case satisfies all four *Rooker-Feldman* prongs, the Court is precluded from considering Plaintiff's claims.

### ii. Art. III Standing

Defendants argue that because one of the principal forms of relief English now seeks is to reopen the 2009 Action, *see, e.g.,* Compl. ¶ 64, English is asserting an interest that belongs to Chase and therefore lacks standing. *See* Def. Br. at 18. Defendants point out that English's Complaint recognizes that "the entity with standing" is Chase, which she describes as "the real

party in interest" in the 2009 Action that "failed to participate in the Action [and] failed to participate in the settlement," and therefore "failed to protect their interest in the foreclosure action." Compl. ¶ 1. Essentially, Defendants argue, English lacks standing because she impermissibly seeks to "stand in the shoes" of Chase by attempting to reopen a suit which she claims Chase should have been more active in.[8] Def. Br. at 19. English did not address standing in her two briefs relating to the motion to dismiss, but concluded in her supplemental briefing on the OTSC that "she meets all of [standing's] requirements." Pl. OTSC Supp. at 2; *see* Pl. Br., Pl. Supp. Br.

Generally, standing requires: (1) a personal injury-in-fact; (2) traceability from the acts alleged to the injury-in-fact; and (3) redressability of the injury-in-fact following a favorable judgment. *Allen v. Wright*, 468 U.S. 737 (1984). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defs of Wildlife*, 504 U.S. 555, 561 (1992). As described above, English concedes that the "real party in interest" in terms of reopening the 2009 Action is third party Chase. Compl. ¶ 1. Therefore, she must establish third party standing to bring this claim on Chase's behalf.

The Third Circuit has explained that "[t]he longstanding basic rule of third party standing is that 'in the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties.'" *Amato v. Wilentz*, 952 F.2d 742, 748 (3d Cir. 1991) (quoting *Powers v. Ohio*, 499 U.S. 400, 410 (1991). However, this "general rule against third party standing," *id.*, can be overcome upon the "satisfaction of three preconditions: 1) the plaintiff must suffer injury; 2) the

---

[8] Defendants note the possibility that Bank of New York Mellon ("BONYM") has standing as an "ultimate assignee[] of the mortgagee," Def. Br. at 18, but argue English cannot bring the action on BONYM's behalf for the same reasons she cannot do so on Chase's behalf, *id.* at 19-20.

16

plaintiff and the third party must have a 'close relationship'; and 3) the third party must face some obstacles that prevent it from pursuing its own claims," *Pa. Psychiatric Soc. v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 288–89 (3d Cir. 2002).

Here, English has not met her burden of establishing third party standing. *Lujan*, 504 U.S. at 561. She acknowledges that Chase is the "entity with standing," Compl. ¶ 1, and "demands that the initial case be reopened to enable Chase, *the proper party*, to litigate," *id.* ¶ 64 (emphasis added). In the face of this concession, she has not asserted or explained, as required by the Third Circuit's test, the "close relationship" between herself and Chase, or why Chase, a sophisticated party represented by counsel faces "obstacles that prevent [Chase] from pursuing its own claims." *Pa. Psychiatric Soc.*, 280 F.3d at 289. Therefore, English's lack of standing deprives this Court of subject matter jurisdiction and her Complaint must also be dismissed on that ground.[9]

### C. Fed. R. Civ. P. 12(b)(6)

Even if this Court had subject matter jurisdiction to hear English's RICO claims, the Court must dismiss them under Fed. R. Civ. P. 12(b)(6). Construing her complaint liberally, as required for *pro se* plaintiffs, and accepting all facts pleaded as true, English has not sufficiently alleged the existence of a RICO "enterprise" or explained the defendants' roles and participation in such an enterprise. *See* 18 U.S.C. § 1962(c). Moreover, although English refers to a "RICO conspiracy" throughout her Complaint, those allegations are conclusory and are thus insufficiently pleaded as well. *See* 18 U.S.C. § 1962(d) (making it unlawful to conspire to violate § 1962(c)). As elaborated below, the RICO counts must therefore be dismissed for failure to state a claim.

---

[9] The Court notes that Defendants also argue that English's suit is precluded by *res judicata* and the entire controversy doctrine because she attempts to reopen a prior a decision, and therefore seeks to relitigate it. *See* Def. Br. at 20-22. Further, Defendants contend that English's 58-page complaint fails to comply with Rule 8(a)(2)'s requirement of a "short and plain statement of the claim" and Rule 9(b)'s heightened pleading standard for fraud. *See id.* at 31-35.

To state a federal RICO claim under § 1962(c), a plaintiff must properly allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004); *see also RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 330 (2016). Turning to a RICO "enterprise," without which a RICO claim cannot proceed, the Third Circuit has provided three "structural attributes" which must be adequately pleaded: "a shared purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 370 (3d Cir. 2010). Here, English does not sufficiently allege these attributes. Although the Complaint makes allegations about instances of fraud, it does not "tie[ ] together the various defendants allegedly comprising the association in fact into a single entity that was formed for the purpose of working together." *Id.* (quoting *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F.Supp.2d 297, 307 (S.D.N.Y.2010)). English does not sufficiently denote a shared purpose between these the fourteen defendants such that a single joint enterprise exists. And while the Complaint offers conclusory allegations about individual relationships between some of the many defendants, *see, e.g.,* Compl. ¶ 151 (noting Kaplan and Copeland were "perfect partner[s] for Attorney Kaplan's scam"), the Complaint "does not indicate how the different actors are associated and does not suggest a group of persons acting together for a common purpose or course of conduct." *Id.* (quoting *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 400 (7th Cir. 2009). Without some explanation of the shared purpose among the enterprise's purported associates, the relationships between them, or the structure of their association, the Court cannot infer the existence of a RICO enterprise. *See Insurance Brokerage Antitrust Litig.*, 618 F.3d at 370. English's substantive RICO counts under §

1962(c) therefore fail to state a claim upon which relief can be granted under Rule 12(b)(6) because of the failure to plead an enterprise.[10]

Similarly, to the extent English alleges a RICO conspiracy under § 1962(d), that claim also fails. As an initial matter, a RICO conspiracy necessarily relies on an underlying substantive RICO claim under Sections 1962 (a), (b) or (c). *See* § 1962(d) ("It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section."). Accordingly, the conspiracy claim must be dismissed because "[a]ny claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993). Even assuming *arguendo* that English's underlying § 1962(c) claim is viable, however, the Complaint does not detail the purported conspiracy beyond mere conclusory assertions that the defendants "contributed to the RICO conspiracy." Compl. ¶¶ 64, 72, 89, 115, 120, 134, 140, 149, 162, 177, 182, 200, 227, 238, and 239. And it is well established that a "general allegation of conspiracy without a statement of facts [is] an allegation of legal conclusion and insufficient to state a cause of action." *A-Valey Engineers, Inc. v. Bd. of Chosen Freeholders of County of Camden*, 106 F. Supp. 2d 711, 718 (D.N.J. 2000) (quoting *Black & Yates v. Mahogany Ass'n, Inc.*, 129 F.2d 227, 232 (3d Cir.1941)). Indeed, courts in this district have noted the failure "to describe the general composition of the conspiracy and each defendant's role therein" warrants dismissal. *A-Valey Engineers, Inc.*, 106 F. Supp. 2d at 718. Because English has not sufficiently

---

[10] Defendants also argue that English has not sufficiently pleaded RICO damages because she asks for punitive and treble damages without specifying her injury. *See* Def. Br. at 30 (citing *Twp of Marlboro v. Scannapieco*, 545 F. Supp.2d 452, 456 (D.N.J. 2008) (dismissing RICO claim where plaintiff failed to plead damages by alleging that, "[a]s a direct and proximate result of … Defendant's pattern of racketeering activity, [plaintiff] has suffered injuries and losses….")).

19

alleged any details of the purported conspiracy beyond conclusory allegations of its existence, her RICO conspiracy claim must also be dismissed.

Therefore, English's RICO claims—pursuant to both §1962(c) and §1962(d)—are dismissed without prejudice for failure to state a claim.

### IV.     **CONCLUSION**

For the reasons set forth above, both motions to dismiss (ECF Nos. 56, 58) are granted. The Complaint is dismissed with prejudice as to the Judicial Defendants and dismissed without prejudice as to the remaining Defendants. Plaintiff's recusal motion is denied (ECF No. 82). An appropriate Order accompanies this Opinion.

**DATED**:  January 31, 2023

*s/ Claire C. Cecchi*
**CLAIRE C. CECCHI, U.S.D.J.**